UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF MISHAWAKA,  )<br>   )<br>   Plaintiff )<br>   )<br>   v. )<br>   )<br>UNIROYAL HOLDING INC., )<br>a successor to Uniroyal Inc. and )<br>U.S. Rubber, )<br>   )<br>   Defendant ) | CAUSE NO. 3:04-CV-125 RM |

OPINION AND ORDER

The City of Mishawaka, owner of a parcel of land known as the Hill Street site, sues the prior owner, Uniroyal Holding, Inc.,[1] under Indiana's Environmental Legal Action statute, Indiana's Landowner Recovery statute, as well as various other Indiana statutes and common law theories, to recover costs incurred in undertaking environmental clean-up measures at the Hill Street site. The initial case management schedule divided the case into two phases: the first phase was limited discovery to the issue of whether Uniroyal is entitled to statutory protection under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") based upon a 1999 settlement agreement with the

---

[1] Unless the context specifically indicates otherwise, the term "Uniroyal" refers to Uniroyal Holding Inc., a corporate successor to Uniroyal, Inc. and the United States Rubber Company. The United States Rubber Company became known as Uniroyal, Inc. in 1964. In 1986, Uniroyal, Inc. filed a certificate of corporate dissolution, and distributed its remaining assets to its sole shareholder, CDU Holding, Inc. CDU Holding, Inc. distributed all of its assets to the CDU Holding Inc., Liquidated Trust, which has since transferred its assets to Uniroyal Holding, Inc.

United States Environmental Protection Agency.[2] Uniroyal moves for summary judgment on the sole issue of whether Mishawaka's claims for clean-up costs are statutorily barred by CERCLA, section 113(f), 42 U.S.C. § 9613(f).[3] For the reasons that follow, the court denies Uniroyal's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment

---

[2] Uniroyal's original motion for summary judgment addressed the merits of Mishawaka's state law claims. Uniroyal moved to withdraw that section of its dispositive motion.

[3] Section 113(f)(2) provides in part:
> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

2

motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") *quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999).

## FACTS

The facts are largely undisputed; to the extent there is a dispute about a fact, it is viewed as favorably to Mishawaka as is reasonable. The Hill Street site has been used for various industrial applications for more than 100 years. One of Uniroyal's corporate predecessors (the United States Rubber Company), acquired the Hill Street site in 1922.

In 1964, the United States Rubber Company became known as Uniroyal, Inc., which owned and operated the Hill Street site until 1985 when ownership was transferred to a newly-formed corporate subsidiary of Uniroyal, Inc.—Uniroyal Plastics Company, Inc. Uniroyal, Inc. sold its interest in Uniroyal Plastics to Polycast Technology Corporation in 1986, and Uniroyal Plastics became a corporate subsidiary of Polycast.

In November 1991, Polycast and certain of its subsidiaries (not including Uniroyal Plastics) filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana. Under the bankruptcy reorganization plan, the entities involved transferred substantially all of their assets to corresponding subsidiaries of Uniroyal Technologies Corporation, a newly formed corporation. Uniroyal Technologies was wholly unrelated to Uniroyal, Inc. or any of its corporate predecessors.

In December 1991, Uniroyal Plastics, then still the owner of the Hill Street site at the time, filed its own Chapter 7 bankruptcy petition in this district. Thereafter, Uniroyal Technologies Corporation conducted operations at the Hill Street site under a lease from the Trustee in the Uniroyal Plastics bankruptcy until June 1997.

After Uniroyal Plastics entered bankruptcy, the EPA conducted a preliminary assessment/visual site inspection of the Hill Street site documenting numerous past spills and releases including an 8,000 gallon phthalate oil spill in 1984, as well as oil seepage into the St. Joseph River during the summer of 1985 from underground storage tanks. The Indiana Department of Environmental Management also conducted five inspections of the Hill Street site and found 22 areas of concern, ranging from deficiencies in the facility's waste analysis plan to improper labeling of hazardous wastes.

In July 1997, after Uniroyal Technologies had left the Hill Street site, IDEM asked the EPA to accompany them on a site inspection of a former channel of the

4

St. Joseph River located on the Hill Street site known as the "raceway." Samples of the water that ran down the raceway were taken at the on-scene coordinator's direction and were analyzed by the Uniroyal Plastics Trustee's contractor. The EPA determined that the presence of materials in the Hill Street site raceway presented an imminent and substantial threat to human health, welfare, and the environment. To eliminate these threats, the EPA undertook clean-up and removal actions. The EPA incurred response costs in excess of $1.5 million.

Following the EPA's 1998 removal activities, Mishawaka took a leasehold interest in the Hill Street site and eventually exercised an option to purchase the site in accordance with a prospective purchaser agreement with the EPA. The prospective purchaser agreement released Mishawaka from potential claims by the United States under CERCLA, as well as claims by the State of Indiana under state environmental law. For purposes of this motion, the court regards Mishawaka as a potentially responsible party — a landowner who acquired ownership in contaminated property after the contamination occurred — but the court makes no determinations about Mishawaka's ultimate liability for contamination, noting only that Mishawaka hasn't been the subject of a civil action under CERCLA thus far, and that it claims not to have caused or contributed to the release or threat of release of hazardous substances or pollutants or contaminants at the Hill Street site[4].

---

[4] Mishawaka claims that it can't be a potentially responsible party because it certified in the prospective purchaser agreement that it didn't cause or contribute to the contamination. Uniroyal doesn't dispute that the EPA never indicated that Mishawaka was a potentially

5

Although no further response activities were anticipated at the time, the prospective purchaser agreement required Mishawaka to perform certain work: from April 1998 to December 1999, Mishawaka leased the Hill Street site and during this time, in accordance with the prospective purchaser agreement, Mishawaka obtained an assessment of the asbestos-containing material at the Hill Street site, as well as removed and disposed asbestos containing materials in certain buildings. Upon purchasing the Hill Street site, Mishawaka retained D.H. Griffin to complete additional work identified under the prospective purchaser agreement, such as removing all asbestos containing materials and demolishing and removing all unusable buildings.

Mr. Griffin performed additional remedial activities for Mishawaka at the Hill Street site that were neither required by the prospective purchaser agreement nor part of the EPA's response activities at the Hill Street site. Uniroyal admits for purposes of this motion only that Mr. Griffin's activities differed from that of the EPA's.

Despite Uniroyal's position that it wasn't liable for the clean-up costs relating to the Hill Street site, it settled with the EPA for $100,000 by an Agreement and Covenant Not to Sue dated December 17, 1999. That agreement

---

responsible party; instead, it claims Mishawaka's ultimate liability is a question of law. The court agrees. Simply because the present landowner of a contaminated site denies causation and hasn't been the subject of a lawsuit, doesn't mean it cannot be a potentially responsible party. *See* Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235,1239-1241 (7th Cir. 1997).

defined Uniroyal as both a "Settling Party" and a "Uniroyal Party" and provided in part:

> EPA and the Settling Parties agree that the payment required of the Settling Parties under this Agreement represent an appropriate settlement of Uniroyal's liability (and the alleged successor or derivative liability of the Uniroyal Parties) in accordance with the terms of this Agreement for a variety of reasons, including without limitation the dissolution of Uniroyal in 1986, Uniroyal's inability to pay any judgment that might be obtained against it, the facts and the law pertinent to the potential successor or derivative liability of the Uniroyal Parties, the risks of litigation, and the public interest in obtaining the payment required by this Agreement to help defray the costs of clean up activities at the [Hill Street] [s]ite.

Half of Uniroyal's settlement was designated for payment directly to Mishawaka.

The settlement agreement also went on to grant the settling parties, including Uniroyal, protection from contribution claims relating to the Hill Street site:

> The Parties agree that Uniroyal [Inc.], the Uniroyal Parties, and the officers, directors, and trustees of Uniroyal [Inc.] and the Uniroyal Parties are entitled, as of the effective dates of this Agreement, to protection from contribution actions or claims as provided by Section 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Agreement. The "matters addressed" in this Agreement are all response action taken or to be taken and all response costs incurred or to be incurred, at or in connection with the [Hill Street] site, by the United States or any other person.

Mishwaka initiated this action to recover funds it expended at the Hill Street site. Uniroyal responded by arguing that all of Mishawaka's claims must fail because Uniroyal settled its potential liability for claims of contribution in its settlement agreement with the EPA. Section 113(f) of CERCLA, commonly referred

7

to as the "contribution bar," enables a party "who has resolved its liability to the United States ... in a [ ] judicially approved settlement" to avoid further liability to a non-settling party "for contribution regarding matters addressed in the settlement."

The parties disagree as to whether the costs being sought by Mishawaka are "matters addressed" under the settlement agreement, but because Uniroyal's motion turns on whether Mishawaka's claims are claims of contribution, the court need not address the issue today.

## DISCUSSION

CERCLA creates two distinct causes of action for cost incurred in cleaning up hazardous waste: § 107(a), 42 U.S.C. § 9607(a), establishes liability and permits a cause of action for direct cost recovery by a party that incurs cost in cleaning up a contaminated site; § 113(f) governs the apportionment of liability and permits a cause of action for contribution among the parties responsible for the contamination. Town of Munster, Ind. v. Sherwin-Williams Co., Inc., 27 F.3d 1268, 1270 (7th Cir.1994).[5] The parties disagree as to whether Mishawaka's state law claims are properly characterized as claims for cost recovery or claims for contribution.

---

[5] Under § 107(a), a landowner is strictly liable for hazardous wastes on its property, so landowners' claims for clean-up costs usually are for contribution. Contribution under § 113 refers to claims by and between jointly and severally liable parties for the appropriate division of the payment one of them has been compelled to make. Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); NutraSweet Co. v. X-L Engineering Co., 227 F.3d 776, 783-784 (7thCir. 2000).

8

When two parties who both injured the property dispute who pays how much, CERCLA directs them to § 113(f) and only to § 113(f). Rumpke v. Cummins Engine, 107 F.3d at 1240. Thus, a state law claim for costs incurred is really a claim for contribution under § 113(f) if the party making the claim already has been found to be partially liable and seeks to apportion the cost among the responsible parties. Akzo v. Aigner, 30 F.3d at 764.

Uniroyal contends that Mishawaka, as the current owner of the contaminated property, is strictly liable under § 107(a), making any claim for clean-up costs is equivalent to a claim of contribution.[6] Rumpke v. Cummins Engine, 107 F.3d at 1240; Akzo v. Aigner, 30 F.3d at 764. The court cannot agree with Uniroyal's contention, since Mishawaka may avail itself of the innocent landowner exception.

Under the innocent landowner exception, a landowner who, although technically strictly liable for hazardous wastes on its property under § 107(a), who

---

[6] Section 107(a) deems liable for cleanup costs:
(1) the owner and operator of a vessel or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of hazardous substance. 42 U.S.C. § 9607(a).

9

is innocent of the contamination, need not bring a contribution action under § 113(f); he may instead seek to directly recover cleanup costs from responsible parties. Akzo v. Aigner, 30 F.3d at 764; Rumpke v. Cummins Engine, 107 F.3d at 1241; AM Intern., Inc. v. Datacard Corp., 106 F.3d 1342, 1347 (7th Cir. 1997); NutraSweet Co. v. X-L Engineering Co., 227 F.3d 776, 784 (7thCir. 2000). This exception has been applied in two situations: (1) when the plaintiff acquires ownership in contaminated property after the contamination has occurred, Rumpke v. Cummins Engine, 107 F.3d at 1241-1242, and (2) when the plaintiff discovers someone surreptitiously dumped waste on his land. NutraSweet v. X-L Engineering, 227 F.3d at 784.

Mishawaka's potential liability is based solely on its post-contamination acquisition of Hill Street. Mishawaka hasn't been the subject of a lawsuit regarding the Hill Street site or admitted that it was liable in some measure for the contamination. Indeed, Mishawaka maintains that it didn't contribute in any way to the contamination and Uniroyal has offered no evidence otherwise.[7]

Uniroyal contends that Mishawaka cannot avail itself of the innocent landowner exception because Mishawaka hasn't established that Uniroyal is liable

---

[7] As noted above, the court does not find, as a matter of law, that Mishawaka is not liable for the contamination of Hill Street site. On the basis of the summary judgment record, the court regards Mishawaka as a landowner whose property others dumped hazardous materials. Ultimately, a landowner like Mishawaka that alleges that it did not contribute to the contamination of the land may be found to be liable under CERCLA. Uniroyal, though, is the moving party today, and its legal theory is that Mishawaka is not an innocent party because of its ownership of Hill Street site. As discussed below, the determinative issue at this stage is whether Mishawaka, as a landowner potentially responsible party, may survive summary judgment and so bring a claim for cost recovery. *See* Rumpke v. Cummins Engine, 107 F.3d at 1241.

10

under § 107(a). *See* NutraSweet v. X-L Engineering, 227 F.3d at 785-786 ( "[t]o establish the *Akzo* exception under § 107(a), a plaintiff must establish that [ ]the defendant is a covered person under § 107(a)"). Unlike today's case, though, it was the plaintiff landowner in NutraSweet that moved for summary judgment on the issue of liability under § 107(a), and Mishawaka, as the opponent of Uniroyal's summary judgment motion, needn't establish Uniroyal's liability under CERCLA to survive summary judgment based upon the innocent landowner exception.

Uniroyal has moved for judgment on a legal theory predicated on establishing that Mishawaka is not innocent because of its ownership of the Hill Street site. The determinative issue at this stage is whether Mishawaka—a potentially responsible landowner—may survive summary judgment under the innocent landowner exception and so bring a claim for cost recovery. Rumpke v. Cummins Engine, 107 F.3d at 1239-1240. Mishawaka need only allege it has not polluted the site, id at 1241; the burden lies on Uniroyal to show no fact finder could conclude the plaintiff was innocent. *See e.g.* Taylor Farm, LLC v. Viacom, Inc., 234 F. Supp. 950, 967 (S.D. Ind. 2002). Because Uniroyal has pointed to nothing in the record to indicate that Mishawaka contaminated the Hill Street site, Mishawaka may bring its state law claims for cost recovery.

Uniroyal also argues the innocent landowner exception is inapplicable because Mishawaka purchased the Hill Street with knowledge of the contamination. Acceptance of that argument would require this district court to overrule the court of appeals. *See* AM Intern. v. Datacard, 106 F.3d at 1347

11

("Datacard presumably paid less for [the contaminated site] because it knew it was buying into an expensive cleanup. While that may have rendered Datacard a little less "innocent" than the landowner described in *Akzo*, Datacard did not take part in the manufacture of Blankrola. Instead, Datacard — like a party forced to clean up contamination on its property due to a third party's spill — faces liability merely due to its status as landowner. As a result, Datacard qualifies under *Akzo*'s exception and can directly pursue its response costs under § 107(a)(4)(B)").

For the above reasons, any state law claims Mishawaka has against Uniroyal are construed as claims for cost recovery and are thus not statutorily barred.

Accordingly, the court DENIES Uniroyal's motion for summary judgment [Doc. No. 24]. Counts 1-8 of Mishawaka's complaint remain pending. The court also DENIES Mishawaka's motion to strike section III of Uniroyal's summary judgment [Doc. No. 59] as moot since Uniroyal's prior motion to withdraw section III was granted and DENIES Uniroyal's motion for oral argument [Doc. No. 21] as moot.

SO ORDERED.

Entered: <u>January 19, 2006</u>

                                                           /s/ Robert L. Miller, Jr.
                                                           Chief Judge
                                                           United States District Court