UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF MISHAWAKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:04-CV-125 CAN |
| | ) |
| UNIROYAL HOLDING, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

INTRODUCTION

All things must come to an end.

This litigation concerns approximately 43 acres of land located at 312 N. Hill Street in Mishawaka, Indiana, which for over one-hundred years was a manufacturing site. The Mishawaka Woolen Manufacturing Company, incorporated in 1874, became a subsidiary of the United States Rubber Company in 1922 and manufactured rubber footwear and other products at the Hill Street site. In 1967, the United States Rubber Company changed its name to Uniroyal, Inc.

The Hill Street site eventually encompassed 58 buildings, over 1.7 million square feet of industrial space, and employed nearly 10,000 workers. In April 1, 1997, industrial operations came to a halt at the Hill Street site.

The primary question presented in this lawsuit is whether the Defendant, Uniroyal Holding Inc., a corporate successor to various legal entities at the site, is legally obligated for various environmental clean up expenses at the Hill Street site. For the reasons stated in this opinion, this Court concludes that it is not.

**I.     PROCEDURE**

On January 14, 2004, Plaintiff, City of Mishawaka ("Mishawaka"), filed its complaint in St. Joseph Circuit Court. On February, 11, 2004, Defendant, Uniroyal Holding Inc. ("Uniroyal Holding"), removed this case to this Court. On April 27, 2006, upon the consent of the parties, this case was reassigned to the undersigned for all purposes. On July 7, 2008, Uniroyal filed a motion for summary judgment. On September 25, 2008, Mishawaka filed a response in opposition. On October 30, 2009, Monaco filed a reply. On September 25, 2008 Mishawaka filed a motion for hearing. Similarly, on October 10, 2008, Uniroyal filed a motion for hearing. This Court may now enter its ruling on all pending matters pursuant to the parties' consent and 28 U.S.C. § 636(c).

**II.    FACTS**

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

In 1922, the United States Rubber Company purchased a 43-acre parcel of land on North Hill Street in Mishawaka, Indiana ("Hill Street site" or "site"). The Company used the site for manufacturing operations for nearly seventy-five years, changing its corporate name to Uniroyal Inc. in 1967. In 1985, during a downturn in business, Uniroyal was presented with an uninvited tender offer. Seeking an alternative, Uniroyal pursued a leveraged buy-out, in which all public investors were replaced with a single shareholder, CDU Holding, Inc. ("CDU"), a newly-formed, privately-held company.

Following the buy-out, Uniroyal transferred each of its operating businesses to newly formed subsidiaries. In addition to creating new subsidiaries, Uniroyal created Defendant, Uniroyal Holding. Uniroyal assigned to Uniroyal Holding the stock of its tire business and certain liabilities, including medical and life insurance benefits for retirees of Uniroyal's previously discontinued businesses and related asbestos liability.

Uniroyal Plastics ("Plastics"), one of the newly formed subsidiaries, was assigned Uniroyal's plastics business and the Hill Street site. Pursuant to the transfer, an agreement was made between Uniroyal and Plastics, regarding the assumption of certain liabilities associated with the plastics business and its facilities.

The interpretation of these agreements, in particular the assumption of environmental liabilities associated with the site, is at the heart of the parties' disagreement in this case.

In 1986, Uniroyal decided to dissolve. However, prior to dissolution and before selling its subsidiaries, the boards of Uniroyal and CDU conducted a thorough review of management and accounting reports to determine that the subsidiaries could satisfy their assumed liabilities. See D'Angelo Aff., Doc. No. 71-3 at 6. Thereafter, Plastics was sold to Polycast Technology Corporation, which later changed its name to The Jesup Group, Inc. ("Jesup"). As part of this sale, Uniroyal claims that it received indemnity from Jesup for the liabilities that Plastics had previously assumed. See Doc. No. 71-5 at 2, 69-70. The parties, however, dispute the extent and effect of this indemnity. Additionally, prior to dissolution, CDU formed the CDU Holding, Inc. Liquidating Trust ("Trust") which assumed all of CDU's liabilities that had not been assumed by a Uniroyal subsidiary or other third party. See Doc. No. 71-5 at 83-139.

Finally, on December 2, 1986, Uniroyal and CDU dissolved, leaving only the Trust and Uniroyal Holding.

In November 1991, Jesup filed for bankruptcy; and, the next month, Plastics also filed for bankruptcy. At that time, Plastics continued to hold ownership of the site. In 1997, after providing for the pensions and insurance benefits of Uniroyal retirees for over a decade, the Trust was terminated. Thereafter, Uniroyal Holding assumed the assets and liabilities of the Trust. Doc. No. 71-6 at 43-54.

In 1998, the EPA undertook response actions at the site, removing hazardous substances and incurring costs in excess of $1.5 million. In 1999, Uniroyal Holding settled pending EPA claims, relating to the site, for $100,000, tendering one-half of the payment directly to Mishawaka. In August 1998, Mishawaka took a leasehold interest in the site and subsequently exercised an option to purchase the site from the trustee in Plastics' bankruptcy. Mishawaka claims that it also incurred over $3.5 million in subsequent clean-up costs at the site.

Mishawaka claims, under numerous theories, that, despite the multiple changes in ownership and the corresponding assumption-of-liability agreements made between the various entities, Uniroyal Holding retained liability for Mishawaka's clean-up costs related to the site. Uniroyal contends, however, that it twice made provision for any liabilities related to the site. First, Uniroyal contends that Plastics expressly assumed liabilities for the site at the time of its creation and promised to indemnify Uniroyal for any claims or judgments related to the site. See Doc. No. 71-4 at 37 and 51. Second, Uniroyal contends that it subsequently received a valid indemnification from Jesup, contemporaneously with the sale of Plastics. In addition, Uniroyal

4

contends that the assumption agreements associated with the creation of Uniroyal Holding and the Trust did not include assumption of the liabilities for the site.  See Doc. No. 71-5 at 2, 69-70.

**III.  ANALYSIS**

    A.    Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

    B.    Uniroyal Holding is not liable for Mishawaka's response costs at the site as a matter of law.

Under § 107 of CERCLA, both the current "owner and operator" of a facility and "any person who at the time of disposal of any hazardous substance owned or operated any facility" can be held liable for various assessment and remedial costs. 42 U.S.C. § 9607(a)(1), (2). Mishawaka does not claim that Uniroyal Holding is liable as an owner or operator of the site. Instead, Mishawaka contends, under five separate legal theories, that Uniroyal Holding is derivatively liable, based on ownership and operation of the site by its corporate predecessor, Uniroyal. Uniroyal Holding responds that Uniroyal twice transferred the liabilities of its site and maintains that Uniroyal Holding and its corporate predecessors did not otherwise assume liability for the site. This Court will address each of Mishawaka's theories of liability in turn.

1. <u>Non-mutual offensive collateral estoppel</u>

To begin, Mishawaka claims that Uniroyal Holding is collaterally estopped from relitigating the issue of its successor status. In support, Mishawaka refers this Court to a 1992 decision made by a federal district court in Wisconsin. <u>See</u> <u>Waste Mgmt. of Wis., Inc. v. Uniroyal, Inc.</u>, 1992 WL 227379 (W.D. Wis. 1992). Mishawaka contends that the Wisconsin court previously decided the issue of Uniroyal Holding's successor status. As such, Mishawaka attempts to assert offensive non-mutual collateral estoppel, a preventative doctrine which is imposed against a defendant who has unsuccessfully litigated the same issue in a previous case, in order to prevent Uniroyal Holding from relitigating the issue of successor liability in this case. <u>See</u> <u>Klauser on Behalf of Whitehorse v. Babbitt</u>, 918 F.Supp. 274, 279 (W.D. Wis. 1996); <u>Levy v. Versar, Inc.</u>, 882 F.Supp. 736, 739 (N.D. Ill. 1995). This Court has broad discretion in determining whether to apply offensive collateral estoppel and should not allow its use, if doing so would be unfair. <u>See</u> <u>Mohn v. International Vermiculie Co.</u>, 498 N.E.2d 375, 379 (Ill. Ct. App. 1986).

The first requirement of non-mutual offensive collateral estoppel is that the issue in the two actions is the same. See Rozema v. Marshfield Clinic, 1997 WL 416292, at *15-16 (W.D. Wis. 1997); see also Levy, 882 F.Supp. at 740. This requirement is strictly applied. "The requirement that the issue resolved in the prior action must be the same as the one presented in the instant proceeding is an exacting criterion. Similarity does not suffice; the issue in the current case must be the precise and identical issue that was decided in the prior action." (reversing district court's application of non-mutual offensive collateral estoppel because the issue presented in the earlier action was not identical to the one presented in that proceeding).

Mishawaka asserts that the central issue of Waste Management was the determination of Uniroyal Holding's successor status for the liabilities of Uniroyal. In support, Mishawaka cleverly stitches select passages from Waste Management together to suggest that the issue in that case was "substantially similar" to the one before this Court. However, a closer reading of the Waste Management opinion reveals that the issues between the two cases are not as similar as Mishawaka suggests, and the dissimilarity of the issues is a fatal flaw in Mishawaka's argument.

The primary issue litigated in Waste Management was whether Uniroyal Holding was subject to personal jurisdiction in Wisconsin, based on the Wisconsin long arm statute. See Waste Management, 1992 WL 227379, at *4 ("Accordingly, the first issue is to determine whether the successor corporations are subject to personal jurisdiction."). Moreover, because the jurisdictional ruling in Waste Management was in response to a motion to dismiss under Federal Rules 12(b)(1) and 12(b)(6), the court did not weigh the allegations on which jurisdiction was based, but accepted those allegations as true. See Waste Management, 1992 WL 227379, at *1, *4 ("The jurisdictional facts appear from the complaint and are accepted by the Court for

7

purposes of these motions as follows: . . . Uniroyal Holding is a successor to Uniroyal and may be liable to plaintiff under § 107 of CERCLA for the response costs . . .").

Because the issues in <u>Waste Management</u> and the immediate case are not the same, Mishawaka has failed to establish the first element of its estoppel argument, similarity of issues. As such, this Court concludes that <u>Waste Management</u> has no preclusive effect in this case.

### 2. <u>Prior Settlement Agreements</u>

Second, Mishawaka points to prior settlement agreements between Uniroyal Holding and the EPA and Mishawaka, to establish successor liability by admission. In particular, Mishawaka notes (1) a 1993 consent decree with the EPA for seventeen different locations across the nation, and (2) a 1999 settlement agreement between EPA and Mishawaka, regarding contribution claims relating to the site. In making these agreements, Mishawaka claims that Uniroyal Holding expressed intention to assume the environmental liabilities related to Uniroyal prior use of the site.

In response, Uniroyal Holding argues that Mishawaka's use of the settlement agreements to establish liability is expressly prohibited by Fed. R. of Evid. 408.[1] Because Mishawaka attempts to offer evidence of prior settlement agreement, precisely for the reasons prohibited by the rule, this Court will not consider it as part of its determination on successor liability. In addition, even if this Court were to consider such evidence, the express terms of both agreements show clear disclaimers of liability on the part of all Uniroyal parties. <u>See</u> 1993 Consent Decree, Doc. No. 88-4 at 5 ("[T]he Uniroyal Parties deny any liability for the liabilities of Uniroyal, Inc. for the covered sites"); 1999 Settlement Agreement, Doc. No. 71-6 at 12-13 ("EPA and the

---

[1] Rule 408 states, "[e]vidence of the following is not admissible on behalf of any party, when offered to prove liability for . . . a claim that was disputed as to validity or amount: (1) furnishing or offering to furnish . . . a valuable consideration in compromising or attempting to compromise the claim." Fed. R. Evid. 408.

8

Settling Parties desire to resolve the Settling Parties' alleged civil liability . . . without litigation and without the admission or adjudication of any issue of fact or law.").

        3.        <u>Express Assumption of Liabilities</u>

Third, Mishawaka argues that Uniroyal expressly retained liability for the site through assignment agreements with Plastics. Mishawaka additionally contends that this retained liability was then passed on to Uniroyal's successors, of which Uniroyal Holding is the last. In support, Mishawaka traces the language of the agreements made between Uniroyal and each of its successors. As such, Mishawaka claims that Uniroyal failed to pass liability for the site to its subsidiary Plastics, based on the express terms of the Restructuring Plan ("Plan"). In particular, Mishawaka claims Uniroyal retained liability for the site through a "catch-all" provision in the Plan. The provisions states, in relevant part, as follows.

> Uniroyal . . does hereby assume and agree to pay, perform and discharge the obligations and liabilities of UNIROYAL, Inc. . . ., existing as of October 27, 1985 and at any time thereafter, of every kind and description relating to . . . the obligations and liabilities described below … (l) Other than to the extent specifically and expressly assumed pursuant to any Assumption of Liabilities and Indemnification Agreement executed as of even date herewith, all obligations and liabilities resulting from claims associated with (I) every plant or facility of Uniroyal, whether currently operating, idle or sold; (ii) every contractor and/or facility used, or alleged to have been used, at any time by Uniroyal for the off-Site treatment, storage, disposal, recycling, reuse, reclamation, handling and/or transportation of waste; and (iii) terminated joint ventures, subsidiaries or facilities of Uniroyal.

Uniroyal Holding Assumption Agreement, Doc. No. 71-4 at 84.

In addition, Mishawaka claims that, based on the language of the Plan, Uniroyal retained liability for all "fixed and determinable" liabilities at the time of transfer. See Doc. No. 71-4 at 42 ("the obligations and liabilities assumed hereunder by Plastics shall not include any obligations which are fixed and determinable in amount as of [October 27, 1985]."). As such,

9

Mishawaka claims that Uniroyal subsequently passed its "retained" liability for the site to each of successors, including CDU, the Trust, and, ultimately, Uniroyal Holding.

This Court does not agree with Mishawaka's characterization of the language or effect of these provisions.  To start, this Court notes that the language of the catch-all provision itself begins with the caveat that the provision only applies, "other than to the extent specifically and expressly assumed pursuant to any Assumption of Liabilities and Indemnification Agreement executed as of even date herewith . . ." Doc. No. 71-4 at 84.  Such express assumption of liability, sufficient to divest Uniroyal of liability under the catch-all provision, was made by Plastics in a contemporaneous Assumption of Liabilities and Indemnification Agreement, executed as of the same date as the Uniroyal Holding Assumption Agreement.  In that agreement Plastics expressly assumed, "all obligations and liabilities associated with every plant or facility . . . listed on Schedule II," which included the Hill Street site.  <u>See</u> Doc. No. 71-4 at 37 and 51.  Thus, the catch-all provision is not implicated in this case.   Such a result is consistent with the law of this Circuit, providing an exception to the general rule, that a purchaser of corporation's assets does not acquire the liabilities of seller, in cases where the purchaser expressly or impliedly agrees to assume the liabilities.  <u>N. Shore Gas Co. v. Salomon Inc.</u>, 152 F.3d 642, 651 (7th Cir. 1998).

Similarly, this Court can not agree that Uniroyal retained liability for the site through the "fixed and determinable" provision of the plan.  Specifically, this Court notes language in the Restructuring Plan which directly contradicts Mishawaka's interpretation of the provision.  For instance, the Restructuring Plan defines "fixed and determinable" to include such things as "accounts payable, payroll related liabilities, taxes, etc." <u>See</u> Doc. No. 88-3 at 6.  In addition, the Restructuring Plan specifically notes that any environmental liability is assumed by the

subsidiary which retained the assets associated with the liability. See Doc. No. 88-3 at 7. ("Certain additional liabilities . . . will also be assumed by the subsidiary that assumes the Uniroyal assets to which the liability is associated. Examples of such liabilities include EPA settlements, litigation, warranties, etc.").

As such, this Court concludes that Uniroyal did not retain liability for the site based on the express language of the Plan.

### 4. Express Assumption of Asbestos Liabilities

Similarly, Mishawaka claims that Uniroyal assumed liability for all asbestos clean-up costs associated with the site, based on the express language of the Plan; claiming, again, that such retained liability was then, later, passed on to its successors. As such, Mishawaka claims that Uniroyal Holding should, at a minimum, be held liable for Mishawaka's nearly $2 million in asbestos abatement costs at the site. In support, Mishawaka cites language in the Plan in which Uniroyal expressly reserves liability for certain asbestos costs. The relevant language is as follows.

> Other than to the extent specifically and expressly assumed pursuant to any Assumption of Liabilities and Indemnification Agreement . . . , all obligations and liabilities resulting from claims for losses or for personal injury or property damage, regardless of the theory of liability upon which such claims are based, arising out of the manufacture, sale, handling, distribution or use of any product formerly or currently manufactured, sold or otherwise dealt with by Uniroyal, including without limitation any such obligations and liabilities relating to . . . asbestos or asbestos-containing products and hose, belting . . , and footwear . . .

Doc. No. 71-4 at 82-83.

However, Mishawaka's contention fails for the same reason as its previous argument. That is, such liability was expressly assumed in Plastics' Assumption of Liabilities and Indemnification Agreement. As stated previously, in that agreement Plastics expressly assumed, "all obligations and liabilities associated with every plant or facility . . . listed on Schedule II,"

11

which included the site. See Doc. No. 71-4 at 37 and 51. Thus, Uniroyal did not retain liability for asbestos clean up at the site; and, because no liability was retained no liability passed to Uniroyal Holding.

        5.      Successor Liability

Fifth and finally, Mishawaka claims that Uniroyal Holding is liable under the equitable doctrine of successor liability. Specifically, Mishawaka asserts that, because the persons who held control at Uniroyal now control Uniroyal Holding, it is equitable to hold Uniroyal Holding responsible for the liabilities of Uniroyal. Additionally, Mishawaka argues that because Uniroyal benefitted from use of the site, it should bear the burdens of any environmental damage therein.

The doctrine of successor liability serves the purpose of identifying transactions where the essential and relevant characteristics of the selling corporation survive a structural change, and it is therefore equitable to charge the purchaser with the seller's liabilities. N. Shore Gas Co. v. Salomon Inc., 152 F.3d 642, 651 (7th Cir. 1998). See also U.S. v. Mexico Feed & Seed Co., Inc., 980 F.2d 478, 487 (8th Cir. 1992).

To begin, this Court finds this argument irrelevant, having already determined that Uniroyal did not retain liability for the site, but effectively transferred liability to Plastics through the various assumption agreements previously discussed. As such, any liability for the site, as to Uniroyal was cut off at the time of transfer to Plastics. Similarly, liability for the site was transferred a second time when Plastics passed ownership and control of the site to Jesup. See Doc. No. 71-5 at 2, 69-70 ("Buyer [Polycast/Jesup] agrees to indemnify and hold harmless the Seller Indemnities against and in respect of any and all . . . liabilities specifically assumed by Buyer pursuant to this Agreement . . .").

Further, this Court notes that, nowhere in its brief, does Mishawaka argue that Uniroyal's conveyance of the site to Plastics, or Plastics conveyance to Jesup, were done fraudulently in order to avoid liability.[2]  See N. Shore Gas Co., 152 F.3d at 651.  Instead, Mishawaka limited its arguments to whether Uniroyal retained liability for the site through the express language of the conveyance and assumption of liability agreements accompanying the initial transfer of the site to Plastics.

In addition, even if this Court were to assume, *arguendo,* that Uniroyal had retained liability for the site, Mishawaka has failed to present adequate facts to show that Uniroyal Holding retains the "essential and relevant characteristics of the selling corporation, Uniroyal" to establish successor liability.  Indeed, the only facts asserted by Mishawaka in support of this theory, is the continuity of two directors who held control under both entities.  While this evidence is not insignificant in such an analysis, by itself, it is insufficient to establish successor liability in this case.

In particular, this Court notes that Uniroyal Holding, as it exists in its present form, is thrice-removed from the original Uniroyal company. Uniroyal was a large manufacturing business, producing numerous different products in factories throughout the country.  Uniroyal Holding, on the other hand, does not produce anything but exists solely to provide for outstanding liabilities of Uniroyal's successor entities, liabilities which were not otherwise assumed by other entities.  Other than pointing to two persons exercising control over both entities, Mishawaka has failed to show how Uniroyal Holding can reasonably be seen as maintaining the same essential characteristics of Uniroyal.

---

[2] An undeveloped argument is a waived argument.  See Kochert v. Adagen Med. Intern., Inc., 491 F.3d 674, 679 (7th Cir. 2007).

13

As such, this Court concludes that Mishawaka has not established that Uniroyal Holding is responsible for the site, based either on the legal theories argued or on the equitable theory of successor liability.

IV. **CONCLUSION**

Because this Court finds that the Mishawaka has failed to present sufficient evidence to establish that Uniroyal Holding is liable for Mishawaka's clean up costs at the site, under any of Mishawaka's theories, this Court now **GRANTS** Uniroyal Holding's motion for summary judgment and awards costs. [Doc. No. 70]. Accordingly, this Court now **DENIES AS MOOT** the parties' motions for a hearing on the motion for summary judgment. [Doc. No. 89 and Doc. No. 93]. Additionally, the Clerk is instructed to term this case in favor of Uniroyal Holding and award costs.

**SO ORDERED**

Dated this 26th Day of February, 2009.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge